**Ex Parte Santiago Margarito Rangel
VARELAS, Applicant.**

No. 73632.

Court of Criminal Appeals of Texas,
En Banc.

Jan. 31, 2001.

Concurring Opinion on Denial of Rehearing
May 23, 2001.

J. Gary Hart, Austin, for appellant.

B. Warren Goodson, Jr., Assistant District Atty., Galveston, Matthew Paul, State's Atty., Austin, for the State.

## OPINION

HOLLAND, J., delivered the opinion of the Court in which MEYERS, J., PRICE, J., JOHNSON, J., and HOLCOMB, J., joined.

This is a post-conviction application for a writ of habeas corpus filed pursuant to Article 11.071 of the Texas Code of Criminal Procedure. Applicant was convicted of capital murder for the death of his two-year-old step-daughter, L.W., and was sentenced to death. In his application for a writ of habeas corpus, applicant asserts that his trial counsel provided ineffective assistance under the Sixth Amendment by failing to request certain instructions in conjunction with extraneous acts admitted during the guilt/innocence phase of his trial.[1] Specifically, applicant claims that trial counsel was ineffective for failing to request that the jury be instructed that they must find beyond a reasonable doubt that applicant committed the extraneous acts before considering them in their deliberations. Additionally, applicant contends that trial counsel should have requested limiting instructions as to the jury's use of the extraneous acts. We will grant the relief requested by applicant and remand the cause for a new trial.

■ To show that his trial counsel was ineffective, applicant must meet the two-pronged test articulated in *Strickland v. Washington.* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). First, applicant must demonstrate that counsel's performance was deficient. *See id.* at 687, 104

S.Ct. 2052. In order to satisfy this prong, applicant must demonstrate that counsel's performance fell below an objective standard of reasonableness, as judged on the facts of a particular case and viewed at the time of counsel's conduct. *See id.* at 688, 690, 104 S.Ct. 2052. Second, applicant must show that counsel's performance prejudiced his defense at trial. *See id.* at 692, 104 S.Ct. 2052. "It is not enough for the [applicant] to show that the errors had some conceivable effect on the outcome of the proceeding." *Id.* at 693, 104 S.Ct. 2052. Rather, applicant must show there is a reasonable probability that the result of the proceeding would have been different but for the errors made by counsel. *See id.* at 694, 104 S.Ct. 2052. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

■ Texas courts have consistently adhered to the standard set out in *Strickland. See generally McFarland v. State,* 928 S.W.2d 482 (Tex.Crim.App.1996). "Any allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness." *Id.* at 500. This Court recognizes that counsel is presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *See id.; see also Strickland,* 466 U.S. at 690, 104 S.Ct. 2052.

■ The claim of ineffective assistance of counsel is cognizable through an application for writ of habeas corpus, even if it was a claim raised and rejected on direct appeal. *See Ex parte Torres,* 943 S.W.2d 469, 475 (Tex.Crim.App.1997). In most cases, the record on direct appeal is

---

1. Applicant also asserts that his trial counsel was ineffective for failing to challenge the admissibility of statements taken in violation of the Vienna Convention. Because we grant

applicant a new trial based on the disposition of the jury instruction issue, it is unnecessary to address the merits of his Vienna Convention claim.

"inadequate to develop an ineffective assistance claim" because "the very ineffectiveness claimed may prevent the record from containing the information necessary to substantiate such a claim." *Id.* Therefore, when an applicant files an application for a writ of habeas corpus, the record can be supplemented by the trial court gathering facts. *See id.* This "provide[s] an opportunity for a dedicated hearing to consider the facts, circumstances, and rationale behind counsel's actions at that juncture of trial." *Thompson v. State,* 9 S.W.3d 808, 814–15 (Tex.Crim.App.1999). Thus, the first issue presented is whether counsel's performance was deficient for failing to request limiting instructions and for failing to request that the jury be required to find applicant committed the extraneous acts beyond a reasonable doubt before using them in assessing guilt of the charged offense.

■ At trial, the State presented evidence that L.W.'s death resulted from her being kicked or hit so forcefully in the abdomen that her heart tore in four different places. Additionally, the State presented evidence of the physical abuse that L.W. had sustained over the six weeks before her death. She suffered fractured ribs, bruises all over her body, a burn on her arm, and a cut on her face. There was no eyewitness testimony concerning the cause of L.W.'s injuries or her death.

During applicant's trial, the State submitted evidence of several extraneous acts allegedly committed by applicant against L.W. in an effort to show applicant's state of mind, intent, relationship and motive. Specifically, the State presented evidence that applicant had excessively dunked L.W. in a swimming pool, had "thumped" the back of her head, had pushed her with his foot, had made her sit still on a couch for over two hours, and had hit her the night before her death. The State argued that applicant committed these extraneous acts, and because he had committed these acts, he must have been the person responsible for L.W.'s death. In contrast, applicant's attorneys advanced the theory that applicant's wife, L.W.'s mother, committed the offense in question. Thus, whether applicant had a pattern of abusing L.W. was essential to the State's case against applicant. Applicant's attorneys failed to request that either burden of proof or limiting instructions be included in the guilt/innocence charge regarding these extraneous acts, even though the attorneys noted during pre-trial hearings that such instructions would be proper.

■ Extraneous acts are generally inadmissible at the guilt/innocence stage of a trial. *See* Tex.R. Evid. 404(b) (stating that "evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show action in conformity therewith."). A defendant is "entitled to be tried on the accusations made in the State's pleading and he should not be tried for some collateral crime or for being a criminal generally." *Wilkerson v. State,* 736 S.W.2d 656, 659 (Tex.Crim.App.1987). In some circumstances, however, evidence of an extraneous act is admissible. *See id.* One such circumstance is delineated in Article 38.36 of the Texas Code of Criminal Procedure, which states:

(a) In all prosecutions for murder, the state or the defendant shall be permitted to offer testimony as to all relevant facts and circumstances surrounding the killing and the previous relationship existing between the accused and the deceased, together with all relevant facts and circumstances going to show the condition of the mind of the accused at the time of the offense.

TEX.CODE CRIM.PROC. art. 38.36(a). The trial judge in this case found the extraneous acts in question admissible because a jury

*could* find beyond a reasonable doubt that the applicant committed the acts.

■ Once an extraneous act has been ruled admissible, the jurors must be instructed about the limits on their use of that extraneous act if the defendant so requests. This Court has held for many decades that "when evidence of collateral crimes is introduced for one of the various purposes for which such evidence becomes admissible, the jury should be instructed that they cannot consider against the defendant such collateral crimes, unless it has been shown to their satisfaction that the accused is guilty thereof." *Lankford v. State,* 93 Tex.Crim. 442, 248 S.W. 389, 389 (1923). In other words, a jury should be instructed that they are not to consider extraneous act evidence unless they believe beyond a reasonable doubt that the defendant committed that act. *See Harrell v. State,* 884 S.W.2d 154, 157 (Tex.Crim. App.1994). "If a defendant, during the guilt/innocence phase, asks for an instruction to the jury on the standard of proof required for admitting extraneous offenses, the defendant is entitled to that instruction." *Mitchell v. State,* 931 S.W.2d 950, 954 (Tex.Crim.App.1996). Therefore, if applicant's counsel had requested the jury to be instructed that they could not consider the extraneous act evidence unless they

believed beyond a reasonable doubt that applicant committed those acts, the requested charge should have been given.[2]

■ Likewise, when the State is permitted to introduce evidence of defendant's extraneous acts for a limited purpose, the defendant also has the burden of requesting an instruction limiting consideration of those acts.[3] *See Abdnor v. State (Abdnor II),* 808 S.W.2d 476, 478 (Tex.Crim.App. 1991). When a defendant so requests this instruction, the trial court errs in not giving the instruction. *See id.* at 478. In pretrial hearings, the State argued that the extraneous acts were admissible for the limited purpose of showing state of mind, intent, relationship, motive and to rebut defensive issues. Therefore, if applicant's counsel had requested that the jury be instructed that they could consider the extraneous act evidence only for the limited purposes for which it was offered, the trial court would have been required to give the requested instruction.[4] *See George v. State,* 890 S.W.2d 73, 76 (Tex.Crim.App. 1994) (stating that "if the defendant so requests at the guilt/innocence phase of trial, the trial court must instruct the jury not to consider extraneous offense evidence admitted for a limited purpose unless it believes beyond a reasonable doubt

---

**2.** In its brief, the State does not dispute this argument.

**3.** A defendant has the burden of requesting a limiting instruction at the time the evidence is admitted as well as requesting a limiting instruction in the charge. *See Garcia v. State,* 887 S.W.2d 862, 878 (Tex.Crim.App.1994).

**4.** As to this issue, the State argues that limiting instructions were not required because Article 38.36 of the Texas Code of Criminal Procedure allows the State to offer testimony as to all the relevant facts and circumstances surrounding the killing and previous relationship between the applicant and L.W. The State asserts that "no limiting instruction is

required where such evidence can be considered on any relevant issue in the case." A limiting instruction would have been proper, however, because the extraneous act evidence should have been admitted for specific purposes as articulated by the State. *See Porter v. State,* 709 S.W.2d 213, 215 (Tex.Crim.App. 1986) (holding that if "evidence is offered for a specific purpose, the defendant is entitled upon proper request to a charge limiting jury's consideration of that evidence to the purpose for which it was offered."); *see also Smith v. State,* 5 S.W.3d 673 (Tex.Crim.App. 1999) (holding that Rule 404(b) of the Texas Rules of Evidence applies even when evidence is admitted under Art. 38.36.).

that the defendant committed the extraneous offense.").

On direct appeal of applicant's conviction, we considered the argument that his trial counsel was ineffective. *See Varelas v. State,* No. 72178, slip op. at 8 (Tex.Crim. App.—March 4, 1997) (not designated for publication). At that time, we stated,

> In light of the number of ways and the degree to which a defendant can suffer harm from the admission of extraneous offense evidence, we have trouble understanding why trial counsel did not request a burden of proof or limiting instruction regarding these offenses. However, the bare record does not reveal the nuances of trial strategy. Further, to hold trial counsel's actions (or inaction) ineffective in the instant case would call for speculation and such speculation is beyond the purview of this Court. Rather, because of the strong presumptions that trial counsel's conduct falls within the wide range of reasonable professional assistance and that such conduct might be sound trial strategy, we must conclude, in light of an otherwise silent record, that appellant failed to meet his burden of showing that his trial counsel's assistance was ineffective.

*Id.* at 10–11 (citations and footnote omitted). At the time of applicant's direct appeal, we were unable to determine his attorney's reasons for failing to object to the omissions in the charge.

▮ But we now have before us an affidavit from applicant's trial counsel and can now determine whether such failure was a product of trial strategy. Trial counsel's affidavit states:

> I have read the Court of Criminal Appeals opinion in which the Court "had trouble understanding why trial counsel did not request a burden of proof or limiting instruction regarding these offenses." ... I can now assure the Court that my failure to request these instructions was not the result of trial strategy. It was simply an oversight. I was aware of *Harrell* and *George* at the time of the trial, but I simply neglected to invoke them and ask the trial court either for a burden of proof instruction or a limiting instruction. I had no reason in fact not to request these instructions, nor can I think of any reason I should not have requested them on the facts of Mr. Varelas's case.

Trial counsel further stated in the affidavit that the instructions would have been consistent with the two defensive issues raised at trial: one, that L.W.'s mother killed her or; two, that applicant killed her, but there was not a specific intent to kill L.W. Trial counsel's conduct fell below an objective standard of reasonableness by failing to request the jury instructions. The trial court would have been required to give the instructions had counsel requested them, and reasonable counsel would have requested the instructions given the facts of this case. Therefore, we conclude that trial counsel's performance was deficient for failing to request either an instruction on the burden of proof or limiting instructions regarding the extraneous act evidence admitted at applicant's trial.[5]

---

5. In its "Findings of Fact and Conclusions of Law," the trial court found applicant's trial counsel failed to request either a burden of proof instruction or limiting instructions. Nevertheless, the trial court found that "[a]pplicant's trial counsel used sound trial strategy in not requesting jury instructions regarding all alleged extraneous offenses. Such limiting instructions would have prevented the jury from considering the extraneous matters as possible evidence someone other than the applicant committed the crime." In her dissent, Judge Keller apparently relies on these findings to reach her

■ Next, we must consider whether there is a reasonable probability that the result of the proceeding would have been different but for trial counsel's deficient performance. *See Strickland,* 466 U.S. at 694, 104 S.Ct. 2052. The function of the trial court's charge is to instruct the jury on how to apply the law to the facts.[6] *See Abdnor v. State (Abdnor III),* 871 S.W.2d 726, 731 (Tex.Crim.App.1994). It is designed to "lead and prevent confusion" during jury deliberations. *Id.* (quoting *Williams v. State,* 547 S.W.2d 18, 20 (Tex.

Crim.App.1977)). The charge must contain an accurate description of the law, and when it does not, the "integrity of the verdict is called into doubt." *See id.*

■ Because this charge did not contain the appropriate burden of proof for the extraneous act evidence, it is reasonable to presume that the jury did not necessarily find beyond a reasonable doubt that the extraneous acts were committed by applicant before using this evidence against him.[7] *See id.* at 740 (stating

conclusion that "failing to request a limiting instruction was a legitimate trial strategy by defense counsel." *Post,* at 638 (Keller, J., dissenting). She believes that the trial court's findings "are rationally supported by the evidence." *Id.* at 638. Respectfully, the trial court's findings are illogical. A limiting instruction telling the jury not to consider the acts as evidence of applicant's guilt in no way diminishes the jury's ability to attribute those acts to another party. Rather, it strengthens applicant's argument that he did not commit the extraneous acts or the capital murder. Therefore, we conclude that these findings are unsupported by the record, especially in light of the fact that trial counsel's affidavit states facts to the contrary and there was no other evidence in the record that counsel's failure was sound trial strategy.

Judge Keller argues that before our decision in *Smith v. State* "no case had held that evidence admissible under Article 38 .36 could be rendered inadmissible by this Court's rules regarding extraneous offenses." *Id.* at 637. But we are not saying that the extraneous act evidence offered in this case was *inadmissible.* Rather, we are stating that the extraneous act evidence, while admissible, required a limiting instruction. Judge Keller also states that Article 38.36 indicates that previous relationship evidence "is relevant for *all* purposes, including character conformity." *Id.* at 636. Contrary to Judge Keller's assertions, this Court definitively answered this issue in *Smith* when a *majority* of the Court held that Texas Rule of Evidence 404(b) and Article 38.36(a) could be applied congruously. *See Smith,* 5 S.W.3d at 679.

Moreover, Judge Keller believes that the law in this area was unsettled because "at the

time of trial, the language of a statute indicated that the evidence was admissible for all purposes." *Post,* at 637 (Keller, J., dissenting). Once again, we disagree. Former Texas Penal Code section 19.06 was virtually identical to Article 38.36(a). In interpreting that statute we stated that "Section 19.06 gives the appellant [or the State] no more special comfort than the general rules of evidence." *Werner v. State,* 711 S.W.2d 639, 644 (Tex.Crim.App. 1986); *see also Smith,* 5 S.W.3d at 678–79 (discussing the relationship between Article 38.36 and Section 19.06 in greater detail.). Furthermore, at least one court of appeals had specifically held that "before a court [could] properly admit evidence of an extraneous offense under section 19.06, it must first find the evidence relevant to a material issue other than the defendant's character." *Hernandez v. State,* 914 S.W.2d 226, 232 (Tex. App.—Waco 1996, no pet.). Therefore, applicant's attorneys should have known that, if requested, a limiting instruction should have been given irrespective of whether the evidence was admissible under Article 38.36(a). In fact, *both* the State and applicant's trial attorneys noted at pre-trial hearings that a limiting instruction would be appropriate.

6.  The charge in the instant case stated that the jury members were "bound to receive the law from the Court which is herein given to you and be governed thereby."

7.  Judge Womack argues that applicant's failure to request a separate charge on the reasonable doubt standard for the extraneous act evidence was "understandable" since counsel's "defensive theory was comprehended perfectly well by the reasonable-doubt charge [given on applicant's guilt]." *Post,* at 639.

that "where no instruction is given, we cannot follow the presumption that the jury properly considered the evidence at trial."). Similarly, the charge did not contain a limiting instruction telling the jury to consider the extraneous acts only for the purposes for which they were admitted-namely state of mind, intent, relationship, motive and to rebut defensive issues. Without such an instruction, the jury was likely to consider the extraneous acts as direct evidence of applicant's guilt; that is, that he acted in conformity with his character. *See id.* at 738 (stating that "where no limiting instruction is given, ..., we must conclude that any prejudice resulting from introduction of the extraneous offense is unabated.").

In applicant's trial, evidence of the extraneous acts was central to the State's case-in-chief. The State argued from its opening statement to its closing remarks that applicant was responsible for the injuries to L.W., and consequently, was responsible for her death. To bolster this claim, the State presented evidence that applicant had shoved L.W. with his foot, had excessively dunked her in a pool, had "thumped" her on the head, and had made her sit still on a couch for two hours. By emphasizing that applicant had committed these acts and by characterizing them as "bad" acts, the State hoped to persuade the jury that applicant was physically abusing L.W. If the jury believed applicant was engaged in a pattern of abuse of L.W., then they would probably conclude that he was responsible for her death.

On the other hand, applicant's attorneys attempted to create a reasonable doubt by arguing their defensive theory that L.W.'s mother was responsible for the injuries and death of L.W. To strengthen applicant's defense, they presented evidence of the mother's temper. Through medical testimony, it was shown that the mother could have killed L.W.—she had both the opportunity and the strength required. Other medical evidence that was presented showed that the CPR efforts used in an attempt to save L.W. could have caused some of the injuries and bruising found on L.W.'s body. Applicant's attorneys also attempted to discredit the one witness, a long-time friend of L.W.'s mother, who testified regarding the extraneous acts. Applicant's attorneys portrayed this witness as a drug-user and highlighted inconsistencies in her testimony. Essentially, applicant's attorneys sought to persuade the jury to question her motivation and truthfulness in testifying. Whether the jury believed this witness's testimony was also key to the State's case. If the jury did not believe her, then they might not believe applicant was physically abusing L.W. or had been the cause of her death. Finally, applicant's attorneys produced testimony that Child Protective Services had investigated L.W.'s household and had found no evidence of child abuse on the part of applicant.

Moreover, the State produced little evidence linking applicant to L.W.'s death aside from the evidence concerning the extraneous acts. An inmate who shared a

---

(Womack, J., dissenting). The flaw in his argument is this: the jury is bound by the charge of the court, and we cannot assume that the jury considered, much less *comprehended,* the proper weight to be given to the extraneous act evidence in the absence of a reasonable-doubt charge. *Cf. Ovalle v. State,* 13 S.W.3d 774, 787 (Tex.Crim.App.2000) (stating that "if the jury read the charge and followed it, it is at least reasonably possible that the jury would have considered only the evidence ... [that] the court told them to consider.") Speculation that the jury used "common sense" and properly weighed the extraneous act evidence at guilt/innocence is "contrary to the established law on the function of the charge." *Id.*

jail cell with applicant before his trial testified that applicant told him that he kicked a girl, but that it was an accident. In response, applicant's attorneys emphasized that the inmate knew only limited Spanish, while applicant understood only minimal English. The defense questioned how well the inmate could actually understand what applicant stated in the cell and questioned the inmate's motive in giving the testimony. The State also presented evidence that applicant reacted too calmly after finding out that L.W. had died, that L.W.'s siblings were afraid of applicant, and that applicant slept at the police station while waiting to be interviewed. In the videotaped statement of applicant taken by officers, applicant gave his account of the morning L.W. died. He stated that from the time L.W. woke up, she was quiet and kept falling down. When she became unconscious, applicant attempted CPR on her. When that did not work, he then carried her next door and the neighbor called 9–1–1. Applicant denied ever hitting or hurting L.W., and he stated that he treated L.W. better than her own father did.

Considering all of the evidence presented by both the State and applicant's trial attorneys, we conclude that applicant's defense was prejudiced because the jury did not receive instructions on the burden of proof or limiting instructions for the extraneous acts. The jury was specifically instructed in the court's charge that they "may consider all relevant facts and circumstances surrounding the death of [L.W.], if any, and the previous relationship existing between the accused and the deceased ..." in determining if applicant was guilty. By not requiring the jury to find applicant committed the extraneous acts beyond a reasonable doubt before considering them as evidence during their deliberations, the jury was left with no guidance as to the proper weight to be given to those acts. More than likely, the jury assumed that because the extraneous acts were part of the evidence surrounding the relationship between applicant and L.W., they were proper factors in determining applicant's guilt. The extraneous acts could have been considered as evidence that applicant killed L.W. without the jury so much as even questioning the possibility that applicant may not have committed those acts. Additionally, without the limiting instructions, it is probable that the jury considered the extraneous acts as direct evidence of applicant's guilt, i.e., propensity evidence, rather than for the purposes in which they were offered, which was limited to the applicant's state of mind, intent, relationship, motive and to rebut defensive issues.

Finally, by not requesting the proper instructions, applicant's trial counsel jeopardized the jury's ability to find applicant guilty only of a lesser-included offense. In the charge, the jury was instructed to consider the charges of involuntary manslaughter and criminally negligent homicide if they did not find applicant guilty of capital murder. As previously explained, by not holding the jury to the proper burden of proof and limiting instructions regarding the extraneous acts, the likelihood of the jury finding applicant guilty of capital murder dramatically increased. Conversely, there was a lesser chance that the jury would instead find applicant guilty of involuntary manslaughter or criminally negligent homicide. Under the facts of this case, there is a reasonable probability that applicant would have been convicted only of a lesser-included offense had the proper instructions been given. If the jury did not believe that applicant committed the extraneous acts, then they might not have believed he was engaged in a pattern of abusing L.W. Without a strong pattern of abuse, it would have been increasingly dif-

ficult for the jury to find applicant *intentionally* caused L.W.'s death. Instead, the jury probably would have found appellant *not guilty* or, at the most, guilty of *unintentionally* causing L.W.'s death, i.e., involuntary manslaughter or criminally negligent homicide.

Thus, we conclude that applicant has demonstrated prejudice by not having a burden of proof or limiting instruction on the extraneous acts in the charge at guilt/innocence. Applicant was prejudiced because the charged offense was similar in nature to the extraneous acts, and the extraneous acts were likely considered as direct evidence of applicant's guilt. Applicant's defense that L.W.'s mother killed her was undermined because the jury was essentially informed that applicant had harmed L.W. in the past, and therefore, he was the cause of her death. Also, applicant's chances for being convicted only of a lesser-included offenses were severely diminished. We conclude that this harm is "sufficient to undermine confidence in the outcome" of applicant's trial. *Strickland,* 466 U.S. at 694, 104 S.Ct. 2052. There is a reasonable probability that, but for the errors committed by applicant's attorneys, the result of his trial would have been different. We grant the relief applicant requests, and we remand the cause for a new trial.

KELLER, J. delivered a dissenting opinion in which KEASLER, J., joined.

KELLER, J. delivered a dissenting opinion in which KEASLER, J., joined.

At trial, the State introduced evidence of extraneous injuries suffered by the child victim. Defense counsel did not ask for a limiting instruction, nor did counsel request a reasonable doubt instruction. Judge Womack has addressed the reason-able doubt issue in his dissenting opinion, and I join that opinion. In this opinion I take issue with the Court's holding that counsel was ineffective for failing to request a limiting instruction.

The Court's opinion assumes that applicant was entitled to a limiting instruction and that counsel should have known that applicant was entitled to a limiting instruction. These assumptions are based upon the idea that the injuries constituted extraneous offenses covered by Texas Rule of Evidence 404(b), requiring that extraneous offenses be relevant to a purpose other than character conformity. But, at least on its face, a statutory provision at variance with Rule 404(b) would appear to control the outcome of this case:

> In all prosecutions for murder, the state or the defendant shall be permitted to offer testimony as to all relevant facts and circumstances surrounding the killing *and the previous relationship existing between the accused and the deceased,* together with all relevant facts and circumstances going to show the condition of the mind of the accused at the time of the offense.

Texas Code of Criminal Procedure, Article 38.36(a). This statute would appear to indicate that evidence of the previous relationship between the accused and the deceased, including extraneous bad acts inflicted by one upon the other, is relevant for *all* purposes, including character conformity. If such evidence is indeed relevant for all purposes, then a limiting instruction would not be appropriate.

Recently, in *Smith v. State,* the Court decided that Article 38.36 did not in any manner displace the applicability of Rule 404(b) to evidence of extraneous bad acts.[1] Even when the acts constitute evidence of the relationship between the accused and

---

1. *Smith v. State,* 5 S.W.3d 673, 679 (Tex. Crim.App.1999).

the deceased, *Smith* requires that the proponent show a non-conformity purpose.[2] But at least three judges on original submission, and four on rehearing, disagreed, believing that Article 38.36 made "relationship" evidence categorically admissible.[3]

The trial in the present case occurred before this Court's decision in *Smith*. Before *Smith*, no case had held that evidence admissible under Article 38.36 could be rendered inadmissible by this Court's rules regarding extraneous offenses. Although there were cases holding that Article 38.36 (and its predecessors) did not dispense with the application of the rules of evidence, those cases involved objections to the *form* in which the evidence was proffered (e.g. hearsay or opinion testimony) rather than its content,[4] or were distinguishable based on the proffered evidence's lack of relevance to the categories outlined in Article 38.36.[5] In fact, before *Smith*, the predecessor statutes to Article 38.36 were held to render admissible such evidence.[6] We have held that "counsel's performance will be measured against the state of the law in effect during the time of trial and we will not find counsel ineffective where the claimed error is based upon unsettled law."[7] Although the absence of on-point caselaw may not excuse counsel in the face of clear statutory language,[8] we are not confronted with a situation in which clear statutory law placed counsel on notice of his legal obligations. Rather, at the time of trial, the language of a statute indicated that the evidence was admissible for all purposes, and no court had held otherwise. At best, then, the law was unsettled on whether applicant was entitled to a limiting instruction, and counsel should not be held ineffective for failing to request one.

There is also some indication in the legislative history that Article 38.36 was intended to render some evidence admissible that may not otherwise be admissible under the rules of evidence. Two speakers in committee objected to the deletion of former Texas Penal Code § 19.06 by the Senate in its proposed bill; both speakers recommended that the provision be recodified in Chapter 38 of the Texas Code of Criminal Procedure.[9] Both speakers believed the provision preserved the ability of a defendant to introduce evidence of previous violent conduct by the victim against the defendant.[10] A House amend-

---

2. *Id.*

3. *Smith*, 5 S.W.3d at 692 (Keller, J. concurring and dissenting, joined by McCormick, P.J. and Keasler, J.) and 692–693 (McCormick, P.J. dissenting on rehearing, joined by Mansfield, Keller, and Keasler, JJ.)

4. *Id.* at 683–690 (Keller, J. concurring and dissenting).

5. *Id.* at 690–691.

6. *Id.* at 681–682, 685–689.

7. *Ex parte Welch*, 981 S.W.2d 183, 184 (Tex. Crim.App.1998).

8. *Id.* at 185.

9. Richard Anderson (representing TCDLA), SB 1067, Committee on the Whole Senate, April 20, 1993, Transcript, p. 6 (Tape 2, Side 1); Deborah Tucker (representing Texas Council on Family Violence), SB 1067, Senate Criminal Justice Committee, April 14, 1993, Tape 3, Side 1.

10. *Id.* Mr. Anderson stated:

One of the other aspects with regard to homicide is you're removing 19.06 which is part of the evidentiary part of the Homicide Code. You're deleting that completely. I'm gonna submit to you that, and this was, this was one of the things that was amended in the last legislative session to include language that, that we, that we knew would allow evidence concerning, ah, the battered spouse syndrome and that type of evidence in. I submit to you, if you're going to remove 19.06 as an evidentiary issue, that you pla—because you're trying to clean up the

ment adding the contents of former § 19.06 to the Code of Criminal Procedure as Article 38.36 was adopted by the conference committee for that legislation.[11] This legislative history is more evidence that, at the time of applicant's trial, an attorney could reasonably suppose that the extraneous offense evidence was rendered admissible for all purposes by Article 38.36.

Moreover, even absent Article 38.36, the record supports a finding that failing to request a limiting instruction was a legitimate trial strategy by defense counsel. The record showed that the victim had suffered old injuries indicative of prior abuse, and there was evidence that, when a child protective service investigator went to the victim's home on a previous occasion, the victim appeared unafraid of applicant. Those two items of evidence at least give rise to an inference that the child's mother had perpetrated prior incidents of abuse upon the victim. If the jury were permitted to draw character conformity inferences from the evidence, the prior injuries could be used to show that Tina Varelas acted in conformity with her violent character and killed the victim. And in

fact, defense counsel claimed that one of the defensive theories was that Tina Varelas, not applicant, was the killer. In its findings of fact the trial court recognized this theory, finding that a limiting instruction would have prevented the jury from considering extraneous matters as possible evidence that someone other than applicant committed the crime, and so trial counsel was not deficient in failing to request such an instruction. Although defense counsel claimed that there was no trial strategy in failing to request a limiting instruction, the trial court's findings show that it disbelieved that claim and the trial court's findings in that regard are rationally supported by the evidence.

I respectfully dissent.

WOMACK, J., filed a dissenting opinion in which KELLER, P.J., and KEASLER, J., joined.

I do not think that counsel's failure to request a charge to the jury on the burden of proof for an "extraneous offense" was "in light of all the circumstances, ... outside the wide range of professionally com-

---

Code, is that you place it in 19.06 in Chapter 38 of the Code of Criminal Procedure which is another evidentiary chapter. Take 19.06 and just take it intact and move it over there so that the types of evidence that are admissible in homicide cases, at the guilt-innocence phase of trial will be preserved, will be relevant as a matter of statute, not as a matter of interpretation by the Court of Criminal Appeals so that that particular evidence will still be admissible in the homicide trial and you can—if you're gonna strike 19.06 as part of this bill, the way that you can preserve that is to move it into Chapter 38 of the Code of Criminal Procedure where there are other evidentiary aspects such as hearsay testimony of a child, rape outcry vict—the outcry of rape victims, that type of evidentiary aspects if you—you can preserve it by moving it there.

Ms. Tucker stated:

And Senator Whitmire, we, we may have in fact made an error in the placement last time of of this whole area of the law. This is where we provide that in a trial for murder or manslaughter, if the defendant raises a self-defense claim, based on acts of violence committed by the deceased against them, that they would be given the right to present to the court all evidence surrounding family violence. So the proposal that we make is that having it in the Penal Code probably isn't the appropriate place. The appropriate place probably is, um, in the Code of Criminal Procedure, Chapter 38, where all evidentiary matters are taken up. So I agree that it should be struck from 19.06 but I'd like to see it properly placed where we need it.

11. Conference Committee Report, SB 1067, Section 7.03.

petent assistance" [1] or, if it were outside that range, "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." [2] My conclusion is based on the very facts that the Court presents to support the contrary conclusion:

In applicant's trial, evidence of the extraneous offenses was central to the State's case-in-chief. The State argued from its opening statement to its closing argument that applicant was responsible for the injuries found on L.W., and therefore, was responsible for her death.

On the other hand, applicant's attorneys attempted to create a reasonable doubt by arguing their defensive theory that L.W.'s mother was responsible for the injuries and death of L.W.[3]

Since this was what the trial was all about, the jury necessarily decided the applicant's guilt by deciding whether they believed beyond a reasonable doubt that he, rather than the mother, inflicted the extraneous injuries. The jury were properly charged on the beyond-a-reasonable-doubt standard for this decision. It is not reasonable to suppose that they neglected that standard in making the crucial decision in the case, or that their use of that standard would have been probable only if the charge contained another instruction on the standard for believing evidentiary facts.

The applicant's trial counsel swears that his failure to request a separate charge "was simply an oversight." [4] It was an understandable one, since his defensive theory was comprehended perfectly well by the reasonable-doubt charge that was given. He overlooked the charge on evidence, I conclude, because it was of no importance to his case.

I do not think that the applicant has met either test for proving that he suffered from ineffective assistance of counsel. I would deny relief.

I would like to make another point about this charge on the burden to prove an evidentiary fact. The authority for giving such a charge is *George v. State*, 890 S.W.2d 73 (Tex.Cr.App.1994).[5] In that case the Court held, "Because the standard of proof necessary to admit extraneous offenses is beyond a reasonable doubt, the previous rationale for requiring the jury to find beyond a reasonable doubt that the defendant committed the extraneous offenses continues to exist." [6]

The *George* Court reached its holding in reliance on *Harrell v. State*, 884 S.W.2d 154 (Tex.Cr.App.1994), by a procedure unsatisfactory to some who thought it was

---

1. *Strickland v. Washington*, 466 U.S. 668, 690, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

2. *Id.*, at 694, 104 S.Ct. 2052.

3. *Ante* at 642.

4. *Ante* at 644.

5. The Court supports this proposition by quoting part of a sentence from *Mitchell v. State*, 931 S.W.2d 950, 954 (Tex.Cr.App.1996). *See ante* at 631. The full quotation shows that the underlying authority is *George:* "Furthermore, as noted previously, in *George, supra*, we

found that if a defendant, during the guilt/innocence phase, asks for an instruction to the jury on the standard of proof required for admitting extraneous offenses, the defendant is entitled to that instruction. *George v.. State*, 890 S.W.2d at 76." *Mitchell*, 931 S.W.2d at 954. The *Mitchell* statement is not only *dictum* from a dissimilar case (the question in *Mitchell* was the meaning of a statute that applied to the punishment stage of a noncapital trial), it is *dictum* from an opinion that was joined by only two Judges.

6. *George*, 890 S.W.2d at 76 (footnote omitted).

right as well as those who thought it was wrong.[7] The procedure was flawed in more ways than one. This is not the occasion for an extended discussion, so I will mention only one of the worst points.

The standard of proof for the admission of such evidence in the United States has been getting lower in the past century. Texas and a few other jurisdictions used the proof-beyond-a-reasonable-doubt standard before 1957, but modern decisions have not.[8] The most common standard has been some version of a "clear proof" standard.[9] After adopting rules like the Federal Rules of Evidence, under which the standard is a preponderance of evidence,[10] a sizeable minority of jurisdictions have adopted that standard for admissibility of evidence.[11] When it comes to the burden of proof that the fact-finder uses in deciding whether the defendant committed uncharged misconduct, there is a consensus that even in criminal cases the prosecutor need not satisfy the burden of proving that fact beyond a reasonable doubt.[12]

In *Harrell*, after recording how Texas law also has moved from the proof-beyond-a-reasonable doubt standard to the clear-proof standard,[13] which was followed by the adoption of the Federal Rules of Evidence in Texas, this Court held that the standard for admissibility would move *back* to proof-beyond-reasonable-doubt.[14] It did so by holding that "clear" means "beyond a reasonable doubt" because "there is some authority for interpreting 'clear' proof to mean proof beyond a reasonable doubt. BLACK'S LAW DICTIONARY 250 (6th ed.1990); *see Haley v. State*, 84 Tex.Crim. 629, 209 S.W. 675, 677 (1919)." [15]

The *Harrell* Court did not quote what the law dictionary and the *Haley* case said about "clear" proof. The following appears in Black's Law Dictionary (6th ed.) at 250:

**Clear.** Obvious; beyond reasonable doubt; perspicuous; plain. Free from all limitation, qualification, question or shortcoming. Free from incumbrance, obstruction, burden, limitation, etc. Plain, evident, free from doubt or conjecture, unequivocal, also unencumbered. Free from deductions or drawbacks.

In banking, collection of funds on which check is drawn and payment of such funds to holder of check.

---

**7.** "Today I am nothing less than astounded at how the ... majority ... now resolves the State's claim in this cause. ... By this nifty bit of legerdemain, the majority has managed to dodge the State's central contention in ... this cause. Such blatant avoidance is especially inappropriate in a discretionary review court, the job of which is to confront the difficult issues head-on." *George*, 890 S.W.2d at 77 (Clinton, J., concurring).

"As Judge Clinton pointed out in his concurring opinion in *George v. State*, ... the State has been blind-sided by this court on 'the question of the appropriate jury instruction in tandem with the question of the proper standard for admissibility.' ... Had something like this happened to a criminal defendant, some people would be screaming 'violation of due process.' But, quite incredibly this court has decided law-abiding citizens, through their district attorneys, are not entitled to insist

upon 'fair' procedures." *Mitchell*, 931 S.W.2d at 957 (McCormick, P.J., dissenting).

**8.** *See* Edward J. Imwinkelried, Uncharged Misconduct Evidence § 2.09 (1998).

**9.** *See ibid.*

**10.** *See Huddleston v. United States*, 485 U.S. 681, 690, 108 S.Ct. 1496, 99 L.Ed.2d 771 (1988).

**11.** *See* Imwinkelried, *supra* note 8, § 2.09.

**12.** *See id.* at § 9.54.

**13.** *Harrell*, 884 S.W.2d at 157–58.

**14.** *Id.* at 159.

**15.** *Id.* at 158.

The following is taken from *Haley,* 84 Tex. Cr. at 633–35, 209 S.W. at 677–78:

If it be assumed that the facts of this case bring it within one of the exceptions [to the rule excluding evidence of specific bad acts] to which we will hereafter refer, it is clear that the due administration of justice demands that evidence tending to show appellant's guilt of another crime should not be admitted, unless the proof of the other offense is clear. In this case, if it is proper for the state to use the alleged fact that appellant poisoned his wife as a circumstance connecting him with the assassination of Williams, it should be shown beyond a reasonable doubt that his wife died from poison knowingly administered by him with intent to destroy her. Applying this principle to the case in hand, we find no satisfactory evidence that the appellant's wife died from poisoning. ...

If this evidence is received upon another trial, it should be limited in the charge of the court, and it should be made clear to the jury that it is not to be considered at all against the appellant, unless the state had shown beyond a reasonable doubt that appellant's wife died from poison knowingly administered by the appellant with intent to kill her.

I do not think that many objective readers would decide that this is sufficient authority to hold that "clear proof" means "proof beyond a reasonable doubt."

The holding of *George* is based on reasoning so clearly wrong, and so outside the main current of American law, that I would overrule it.

But even if the applicant was entitled to such a charge, I would not hold that his counsel's failure to ask for one was incompetent or that it undermines my confidence in the verdict. I respectfully dissent.

KEASLER, J., filed a dissenting opinion, in which HERVEY, J., joined.

Varelas claims that his counsel was ineffective in failing to request a limiting instruction and a reasonable doubt instruction as to certain extraneous acts. To establish ineffective assistance of counsel under *Strickland v. Washington,*[1] Varelas must show that his trial counsel's performance 1) was deficient [2] and 2) prejudiced his case.[3] The majority holds that Varelas met both of these requirements and remanded the case for a new trial. I do not find that Varelas satisfied either requirement.

### A. Extraneous Offenses

According to the majority the State introduced "extraneous offense" testimony showing that Varelas had excessively dunked L.W. in a swimming pool, "thumped" the back of her head, pushed her with his foot, made her sit still on a couch for over two hours, and hit her the night before her death.[4] But Varelas also takes issue with several other extraneous offenses. He labels medical testimony that L.W. suffered multiple bruises, head injuries, anal trauma, and broken ribs as extraneous offenses that should have raised a limiting and reasonable doubt instruction. Although Varelas was not directly linked to any of these injuries, the State introduced evidence that Varelas was the parent with constant access to the child. The following discussion of the ineffective assis-

1. 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

2. *Id.* at 687, 104 S.Ct. 2052

3. *Id.* at 692, 104 S.Ct. 2052.

4. *Ante* at 630.

tance of counsel claim takes into account all of the above alleged acts and injuries.

## B. Deficient Performance

Meeting the deficiency requirement of *Strickland* requires that the defendant show that trial counsel's performance fell below an objective standard of reasonableness,[5] based on all the facts and circumstances of the case and viewed at the time of counsel's conduct.[6] Also, the defendant must prove that counsel's errors, judged by the totality of the representation, not by isolated instances of error or by only a portion of trial, denied him a fair trial.[7] The purpose of the Sixth Amendment's effective assistance guarantee is not to improve the quality of legal representation, although that is an important goal of legal system. The purpose is simply to ensure that criminal defendants receive a fair trial.[8]

To support its holding that defense counsel was ineffective, the majority states that the trial court would have been required to give limiting and reasonable doubt instructions upon request, and reasonable counsel would have requested instructions given the facts of the case.[9] The majority relies heavily on an affidavit from defense counsel asserting that the failure to request a limiting and a reasonable doubt instruction was not the result of trial strategy but was an oversight. But the fact that defense counsel now believes she made a mistake does not necessarily mean that she did. Deficiency is viewed objectively, in light of what a reasonable attor-ney would have done under the circumstances.[10]

### 1. Limiting Instruction

With respect to the failure to request a limiting instruction, defense counsel's performance was not deficient. As Judge Keller points out in her dissenting opinion, the majority assumes that Varelas was entitled to a limiting instruction. Even though trial counsel now believes that she should have requested a limiting instruction, the trial record renders this belief unreasonable.[11] I agree with the majority that if evidence is admitted for a limited purpose, the applicant is entitled to a limiting instruction upon proper request.[12] I just do not agree that this evidence was admitted for a limited purpose.

There were two pre-trial hearings about extraneous offenses. One was Varelas' motion in limine requesting that the State not mention extraneous offenses during voir dire without approaching the bench. The second pre-trial hearing was a motion to suppress extraneous offenses during the guilt/innocence phase of the trial. The majority asserts that the State argued that the extraneous offenses were admissible for the limited purpose of showing state of mind, intent, relationship, motive and to rebut defensive issues.[13] But this is not the full extent of the State's argument. Although the State did argue that the extraneous acts were relevant to show state of mind, intent, relationship, motive, and to rebut defensive issues, the State's underly-

---

**5.** *Strickland v. Washington,* 466 U.S. at 687–88, 104 S.Ct. 2052.

**6.** *Id.* at 688, 104 S.Ct. 2052.

**7.** *Id.* at 695, 104 S.Ct. 2052.

**8.** *Id.* at 689, 104 S.Ct. 2052.

**9.** *Ante* at 632.

**10.** *See generally Strickland v. Washington,* 466 U.S. at 688, 690, 104 S.Ct. 2052.

**11.** *See id.* at 687–88, 104 S.Ct. 2052.

**12.** *Ante* at 631 n. 3.

**13.** *Ante* at 631.

ing argument was that all of these extraneous acts were admissible per se under article 38.36 of the Code of Criminal Procedure.[14] In fact, the State began both pre-trial hearings arguing that this evidence was admissible under article 38.36. In the pre-trial hearing on the motion in limine, defense counsel stated that this article "applies specifically by its terms to the previous relationship existing between the accused and the deceased, if at all." Defense counsel never argued that these acts were inadmissible because they only proved the defendant acted in conformity. Nor did defense counsel ever argue that these acts, if admitted, should be limited under evidence rule 404(b). Instead, defense counsel argued that the acts were inadmissible because 1) the State had not shown beyond a reasonable doubt that Varelas committed the extraneous acts and 2) the probative value of the extraneous acts was outweighed by the prejudice to Varelas. The State responded to these arguments and concluded the hearing by asking the trial court to allow the extraneous evidence into the guilt/innocence phase of the trial under article 38.36. The trial judge denied the defendant's motion to suppress, allowing the extraneous acts to be admitted, specifically because he found that a jury could find beyond a reasonable doubt that Varelas committed the acts. The trial judge did not find that the prejudicial effect outweighed the evidence's probative value. The trial judge's ruling at the pre-trial hearing in no way limited the admission of these extraneous acts. So it is evident from the pre-trial arguments from both sides, as well as from the trial court's ruling, that the extraneous acts were not offered or admitted for any limited purpose but were generally admitted under article 38.36.

An additional factor showing that these offenses were offered and admitted without limitation is the nature of the extraneous acts. There were several extraneous injuries that defense counsel sought to exclude that were not directly tied to Varelas-namely multiple bruises, head injuries, anal trauma, and broken ribs. None of these would go to show state of mind, intent, relationship, motive, or rebut defensive theories. But these extraneous injuries would show the circumstances surrounding the offense under article 38.36. Objectively, it would have been perfectly reasonable for a trial attorney to believe that the extraneous acts had been admitted for all purposes under article 38.36, and requesting a limiting instruction would not be proper. As Judge Keller has noted in her dissent in this opinion, as well as her concurring and dissenting opinion in *Smith v. State*,[15] at the time of this trial, evidence of extraneous acts was admissible under article 38.36. *Smith* has since changed that rule, holding that 404(b) bans conformity evidence despite article 38.36.[16] I believe that trumping legislative statutes with our judicially enacted rules is high-handed and disrespectful.

In an ineffective assistance claim, it is the appellant's burden to prove by a preponderance of the evidence that counsel was ineffective.[17] The record reveals that this evidence was not admitted for any limited purpose and Varelas has not shown otherwise. It was not objectively unreasonable for defense counsel to forgo an instruction.

14. *See Appendix.*

15. 5 S.W.3d 673 (Tex.Crim.App.1999).

16. *Id.* at 679.

17. *Cannon v. State,* 668 S.W.2d 401, 401 (Tex. Crim.App.1984).

### 2. Reasonable Doubt Instruction

A defendant requesting a reasonable doubt instruction on extraneous acts is entitled to such an instruction.[18] But the fact that defense counsel did not request an instruction and a reasonable attorney would have does not necessarily mean that Varelas' lawyer was ineffective.[19] As Judge Womack noted, even though defense counsel felt that her failure to request a separate charge was an oversight, it was an understandable one under the circumstances. A defendant is not entitled to errorless counsel. Trial counsel are bound to make mistakes, and in an ineffective assistance claim we are to evaluate mistakes in light of all the circumstances and the totality of the representation.[20] Under this analysis I do not find that defense counsel was deficient in her performance.

### C. Prejudice

But even if Varelas had shown that counsel's performance was deficient, he has not shown that he was prejudiced. To show prejudice, it is not enough for Varelas to establish that the errors had some conceivable effect on the outcome of his proceedings.[21] He must demonstrate that there is a reasonable probability that, but for counsel's errors, the fact-finder would have had a reasonable doubt respecting guilt.[22] A reasonable probability is a probability sufficient to undermine confidence in the outcome.[23] In reviewing this determination, we consider the totality of the evidence before the jury.[24]

The majority concludes that because there was no limiting instruction or reasonable doubt instruction as to the extraneous offenses, there was prejudice. Citing *Abdnor v. State*,[25] the majority states that when the jury charge does not contain an adequate description the of the law, the integrity of the verdict is called into question.[26] But in *Abdnor* after we said that an error or incomplete charge jeopardizes a defendant's right to a jury trial, we held that such an error does not result in an automatic reversal.[27] It is also important to note the context of the *Abdnor* opinion. In *Abdnor* defense counsel requested a limiting instruction which was denied. We reviewed the case to see if the trial judge's failure to give a limiting instruction on extraneous offenses caused the defendant "some harm." [28] If there had been no objection at trial we would have looked to see if the defendant suffered "egregious harm." [29] The harm analysis in *Abdnor* is quite different than the prejudice analysis in *Strickland.* We look to see if Varelas has shown that there is a reasonable probability that, but for counsel's errors, the outcome would have been different.[30] Although the majority looks at the effect of the judge not giving instructions on the

---

**18.** *Harrell v. State*, 884 S.W.2d 154, 157 (Tex. Crim.App.1994).

**19.** *See Young v. State*, 991 S.W.2d 835, 839 n. 6 (Tex.Crim.App.1999).

**20.** *Strickland v. Washington*, 466 U.S. at 688, 695, 104 S.Ct. 2052.

**21.** *See id.* at 693, 104 S.Ct. 2052.

**22.** *Id.* at 695, 104 S.Ct. 2052.

**23.** *Id.* at 694, 104 S.Ct. 2052.

**24.** *Id.* at 698, 104 S.Ct. 2052.

**25.** 871 S.W.2d 726 (Tex.Crim.App.1994) (*Abdnor III*).

**26.** *Ante* at 633.

**27.** *Abdnor v. State*, 871 S.W.2d at 731.

**28.** *Id.* at 733.

**29.** *Id.* at 732.

**30.** *Strickland v. Washington*, 466 U.S. at 695, 104 S.Ct. 2052.

extraneous acts, the majority does not look at how the outcome would have been different if trial counsel had not made the errors they are claiming. So under the majority's theory, if trial counsel had not made these errors, the jury would have received a charge that included a limiting and reasonable doubt instruction.

### 1. Limiting Instruction

The majority believes that extraneous offenses were offered for the limited purposes of showing state of mind, intent, relationship, motive and to rebut defensive inferences. Arguably the extraneous acts that were directly tied to Varelas—shoving L.W. with his foot, dunking her in a pool, thumping her in the head, making her sit still for two hours, and hitting her the night before her death—could be considered by the jury for the limited purpose of rebutting the defensive theory that Varelas' wife killed L.W. These extraneous acts could also be used to show the relationship between Varelas and L.W., a purpose is not listed in 404(b). But I cannot find any 404(b) exception that applies to the other bruises and injuries not directly linked to Varelas. Nevertheless, even if these extraneous acts were limited, they still would be admissible. The jury could consider these acts for limited purposes along with the evidence that linked Varelas to L.W.'s death.

At trial the State put on evidence that L.W.'s death was caused by a traumatic blow to her abdomen, probably a kick, so forceful that the impact sent blood gushing from her liver up to her heart causing her heart to tear in four places, quickly fill with blood, and killing her. Varelas' primary defense was that his wife, Tina, killed her two-year old child. But the testimony at trial revealed that Varelas watched L.W. while Tina was at work and was L.W.'s primary care-giver during the

month prior to her death. According to Varelas' own taped statement, on the day of L.W.'s death Tina left for work at 7:09–7:10 a.m. L.W. awoke after Tina left and Varelas noticed that she was acting sad. Varelas claimed that he went to make L.W. breakfast and she just fell down. About three minutes later she fell down again and did not move. Varelas claimed that he applied VapoRub and attempted CPR before taking L.W. to a neighbor's house and calling 911 at approximately 7:38 a.m. Although his defense at trial was that Tina abused and eventually killed L.W., during his statement he said that Tina did not abuse L.W. Three medical experts for the State testified that a trauma such as this one would cause death within seconds to a few minutes. If L.W.'s death was within seconds or minutes of the injury, Varelas' story could not possibly be accurate. In response, the defense put on a doctor to argue that L.W. would not lose consciousness for 20 minutes up to four hours. In closing, the State directly challenged this time frame. Even if this doctor's numbers were correct, the earliest this injury occurred was around 3:00 a.m. The State argued that it was implausible to believe that Tina got up in the early morning hours and kicked this child so forcefully that it caused her death with Varelas hearing nothing in their small trailer home. The timing of the injury was the focal point of the State's case and closing argument. The defense did not rebut this argument during closing. Instead, the defense argued that Varelas cared for this child and tried to save her and that Tina must have known about the abuse of this child, implying that Tina caused the death of L.W.

Aside from the medical evidence, there was testimony from Varelas' jail mate that Varelas told him he accidently kicked a girl. There was also evidence that L.W.'s siblings were afraid of Varelas. Consider-

ing the evidence before the jury, even if the judge had given a limiting instruction, Varelas has not shown with reasonable probability that the result would be different.

### 2. Reasonable Doubt

Even though the judge did not give a reasonable doubt instruction with respect to the extraneous acts specifically, a general reasonable doubt instruction on guilt was given to the jury. I agree with Judge Womack's assessment that the jury necessarily decided Varelas' guilt by deciding whether they believed beyond a reasonable doubt that he, rather than Tina, inflicted the extraneous injuries and caused L.W.'s death. Even if counsel was deficient for failing to request a reasonable doubt instruction, Varelas has failed to show that the he was prejudiced.

I respectfully dissent.

### *APPENDIX*

In all prosecutions for murder, the state or the defendant shall be permitted to offer testimony as to all relevant facts and circumstances surrounding the killing and the previous relationship existing between the accused and the deceased, together with all relevant facts and circumstances going to show the condition of the state of mind of the accused at the time of the offense.

Tex.Code Crim. Pro. art 38.36(a)

### ON STATE'S MOTION FOR REHEARING

HOLLAND, J., filed an opinion concurring to the denial of the motion for rehearing.

I join the Court's denial of the State's motion for rehearing. I write this concurring opinion to comment on aspects presented in Presiding Judge Keller's dissent to the denial of the motion for rehearing.

The dissent states that the Court's opinion "ignores the fact that *two* attorneys represented applicant." In an affidavit, trial counsel #1 confesses error in failing to request the proper limiting instructions and states that this failure was not the result of trial strategy. While trial counsel #2 did not provide such an affidavit, I believe that it is fair to presume that both counsel had the same trial strategy. It would be unreasonable to assume that one attorney would be aware of an important strategic decision in the case while the other attorney knew nothing about it. And if that were the case, I would further question the effectiveness of both counsel.

Presiding Judge Keller further states that trial counsel #2 "consciously decided *against* asking for a limiting instruction when other extraneous act evidence was introduced because it would have called greater attention to the evidence." She uses this evidence to bolster her conclusion that the failure to request limiting instructions was the result of trial strategy. The context in which trial counsel #2 made this decision is important to note. Trial counsel #2 did not ask for a limiting instruction when applicant's bigamy charges were mentioned by a witness. Prior to trial, both parties and the trial judge agreed that the bigamy charges were irrelevant at guilt/innocence. The State agreed to wait until the punishment phase to produce this evidence. To minimize the attention brought to the bigamy charge, trial counsel #2 failed to request a limiting instruction as a matter of trial strategy.

The strategy concerning the extraneous acts *admissible* under Article 38.36 is a different question, however. Those extraneous acts discussed in the Court's original opinion in this cause were admissible and

were present throughout the guilt/innocence phase of trial. Since the jury was going to hear about these extraneous acts, the only reasonable strategy could be to limit the jury's consideration of those acts to the purposes articulated by the State in pre-trial conference. Indeed, trial counsel # 1 states in her affidavit that there was no reason, nor could she think of a reason, not to request limiting instructions on those extraneous acts. Nor can I. The admissible extraneous acts permeated the entire trial. Foregoing the limiting instruction would not minimize the jury's attention to the acts. Rather, requesting such a limiting instruction could only serve to diminish the impact and consideration of the acts. Therefore, I stand by the Court's opinion that there is no evidence in the record to suggest that the failure to request limiting instructions was the result of trial strategy.

With these comments, I vote to deny the State's motion for rehearing in this cause.

KELLER, Presiding Judge, filed an opinion dissenting from denial of the motion for rehearing in which KEASLER, and HERVEY, JJ., joined.

The Court refuses to grant the State's motion for rehearing, which rightly questions not only the legal but the factual assertions in the Court's opinion on original submission. In a footnote, the Court contended that a limiting instruction was required for certain extraneous offenses because the extraneous act evidence was admitted for specific purposes articulated by the State .[1] But this statement was false because no limiting instruction was requested or given at the time the evidence was admitted. As a result, the evidence was admitted for all purposes. The Court now corrects its opinion by replacing the "was admitted" with "should have been admitted." [2] The factual error points to a more serious legal error discussed in my dissent on original submission but still overlooked by the Court. The question is whether counsel was ineffective for failing to request a Rule 404(b) limiting instruction at the time the evidence was admitted. We held in *Smith*[3] that Rule 404(b) applied to evidence admitted under Article 38.36, but as I explained in my dissent, the law was unsettled on that issue before *Smith* was decided, and appellant's attorneys could not be held ineffective for their conduct because appellant's trial occurred before *Smith* was decided.

In addition, the Court's opinion—both on original submission and as corrected—ignores the fact that *two* attorneys represented applicant. Only one—Elisa Vasquez—executed an affidavit confessing error in failing to request the instructions. That affidavit did not implicate the entire defense team, only Vasquez. Without evidence about the motives of the other attorney, applicant has failed in his burden to establish that the lack of a request was not trial strategy.

Moreover, the record indicates that applicant's other attorney—Brian Abbington—consciously decided *against* asking for a limiting instruction when other extraneous act evidence was introduced because it would have called greater attention to

---

1. *Ex Parte Varelas*, at —— n. 3, 45 S.W.3d 627, 631 n. 3 (Tex.Crim.App., 2001).

2. *Ex Parte Varelas*, at —— n. 4, 45 S.W.3d at 631 (Tex.Crim.App., 2001).

3. *Smith v. State*, 5 S.W.3d 673 (Tex.Crim.App. 1999).

the evidence.[4] Thus, applicant not only failed to carry his burden as to the reason for the lack of a request for a limiting instruction, the record shows that Abbington was responsible for making decisions about whether to forgo limiting instructions and had done so, as a matter of trial strategy, on another occasion during the trial.[5] The Court's statement that there is no evidence in the record that counsel's failure to request a limiting instruction was the result of trial strategy is thus factually incorrect.

Finally, even assuming that a limiting instruction and a burden of proof instruction should have been given, the Court errs in finding that a reasonable probability existed that the outcome would have been different. The Court finds that "Without a strong pattern of abuse, it would have been increasingly difficult for the jury to find applicant *intentionally* caused L.W.'s death. Instead the jury probably would have found appellant *not guilty* or, at the most, guilty of *unintentionally* causing L.W.'s death, i.e. involuntary manslaughter or criminally negligent homicide."[6] As the Court's opinion explains, the State produced evidence demonstrating that the child died as a result of being struck in the abdomen so hard that the blow tore her heart in four places.

The jury's notes to the trial court focused collectively on the timing of the child's injuries, which suggests that the jury's determination was not a product of its concern about extraneous act evidence. Even if consideration of the evidence had been limited to the purposes described by the State, the jury would have been entitled to consider the acts to show state of mind, intent, relationship, motive, and to rebut defensive issues. While it is barely conceivable that unlimited, as opposed to limited, consideration of the extraneous acts could have influenced the jury to convict applicant on the basis of his character, the physical evidence that the State produced and the jury's notes during its deliberations suggest that it is far more likely that the jury convicted applicant on the basis of evidence of the transaction on trial rather than evidence of extraneous offenses. The Court's conclusions to the contrary are simply speculations that are not supported by the record. I cannot conclude that applicant has demonstrated a reasonable probability that the jury's verdict would have been different had counsel requested limiting and burden of proof instructions regarding the extraneous acts.

I would grant the State's motion for rehearing and deny applicant relief. Be-

---

4. MR. ABBINGTON: Could we approach the bench?

    THE COURT: Yes.
    MR. ABBINGTON: I would object to the thing about the bigamy. I guess we have opened the door, and I have to live with it. We just talked about the fact that we weren't going to do it. I think that in all fairness that Ms. Criss tried to limit the question, but it was non-responsive. And I haven't figured out how to handle that. I am open to suggestion.

    MS. BAGGETT: Instruction?
    MS. CRISS: But if you were to ask for an instruction, it would emphasize it.
    MR. ABBINGTON: That's why I didn't ask for it down there.

5. *See Kimmelman v. Morrison*, 477 U.S. 365, 384, 106 S.Ct. 2574, 91 L.Ed.2d 305 (1986); *Strickland*, 466 U.S. at 688–89; *Stafford v. State*, 813 S.W.2d 503, 509 (Tex.Crim.App. 1991).

6. *Varelas*, at ——, 43 S.W.3d at 636 (2001).

cause the Court refrains from doing so, I must dissent.