

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

|  |  |  |
|---|---|---|
| RICHARD LEWIS, JR., | § | No. 08-12-00151-CR |
| Appellant, | § | Appeal from the |
| v. | § | County Criminal Court No. 5 |
| THE STATE OF TEXAS, | § | of Tarrant County, Texas |
| Appellee. | § | (TC# 1232186) |
|  | § |  |

**O P I N I O N**

Richard Lewis, Jr. appeals the trial court's judgment convicting him of assault bodily injury-family member and sentencing him to one year in jail. In fives issues, Lewis complains of: (1) his counsel's performance (Issue Two); (2) the trial court's consolidation of his offenses into a single trial and denial of his motions for continuance and mistrial (Issues One and Three); and (3) the trial court's denial of his objections to the complaining witness's testimony (Issues Four and Five). Concluding that the issues raised by Lewis have no merit, we affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

Lewis and Veronica Arges ("Arges") met at a halfway home in May 2010 and became romantically involved. Their relationship continued after they left the halfway home, and, later

that year, they began living together in an apartment. Shortly after moving in with Arges, Lewis was remanded back to an ISF.[1] Though Lewis was incarcerated in the ISF for five months, he and Arges continued to date.

Lewis was released from the ISF in the early morning hours of February 25, 2011. Following his release, Lewis went back to the apartment. Arges was there, but took her time answering the door whilst her male friend sneaked out of the apartment unbeknownst to Lewis. Lewis came into the apartment "calling [Arges's] name saying [he] didn't know [if] somebody was here, looking around the apartment, just very furious, just pacing back and forth." Before Arges went to work that morning, Lewis pushed her.

Arges left work early that afternoon, returned to the apartment, and found Lewis intoxicated. Lewis, who remained angry, slapped Arges. Later that evening, Arges went to the store whilst Lewis remained in the apartment. During that period, someone came by the apartment looking for Arges. When Arges returned from the store, Lewis "was very angry and real hyper [,]" "like he had used drugs." The two argued and Lewis, after accusing Arges of being "with some other people," left the apartment and knocked on the door of a neighbor Lewis suspected of sleeping with Arges. When the neighbor opened the door, Lewis "hit him in the face or in the head and busted his head open." Arges heard the commotion and became "[n]ervous and a little frightened." She locked the door to the apartment, but opened it two minutes later. Lewis rushed in and slapped Arges in her ear and on her neck.

Arges fled but returned later, only to flee again when Lewis grabbed her by her hair. Arges, while on the phone with the police, rushed into her neighbor Danny Coulson's apartment shouting "that someone was going to kill her." Arges, who had locked herself in the bathroom,

---

[1] An ISF is an intermediate sanction facility.

2

heard Lewis pounding on the neighbor's door and asking for her. When she opened the bathroom door, she saw Lewis "bust[] the window with his fist." Though there was "much screaming and hollering," Coulson heard Lewis threaten to kill Arges. Because Lewis did not leave after Coulson informed him that the police had been summoned, Coulson and his brother hit Lewis with a walking cane and billy club, respectively.

Police officers arrived approximately three to four minutes later. Because Lewis had left Coulson's apartment by then, Coulson directed the officers to Arges's apartment. Officers Michael Williams and Thomas Hauck of the Fort Worth Police Department testified that when Lewis was informed that he was under arrest for family violence, Lewis turned his back on them, told them that he was not going anywhere, and began walking toward a bedroom. Officers Williams and Hauck, fearing for their safety, grabbed Lewis by his arms. When Lewis stiffened up, Officers Williams and Hauck forced him down to the ground. Lewis hit his head on the tile floor and sustained an injury to his right eye. According to Officer Williams, Lewis was "confused on what happened because of how he hit his head on the tile."

After Lewis was handcuffed, he was escorted to the patrol car. Lewis was uncooperative, refusing to sit and place his legs inside the vehicle. As he was being placed in the vehicle, Lewis kicked at Officer Williams. Lewis was placed in leg restraints and taken away for medical treatment.

Lewis was subsequently charged with assault bodily injury-family member and resisting arrest in two separate instruments. After both cases were called for trial, the following discussion ensued:

[THE COURT]: Is the State ready?

3

[PROSECUTOR]: Yes, Your Honor.

[THE COURT]: And is the Defense ready?

[DEFENSE COUNSEL]: Your Honor, at this time, we're making an oral – we're making a motion for continuance. It's come to our attention that there was a motion to try these two cases together.

We believe – well, our contention is that the motion was not properly filed, therefore not giving us the adequate and the proper notice.

So at this time, we're asking that the trial – that we be given the opportunity to have a continuance.

[THE COURT]: And the State's response?

[PROSCUTOR]: Well, it is true that the motions weren't filed before today. I hand-delivered copies of the State's intent to join the offenses, hand-delivered copies of those notices to [defense counsel] back in January, on January 26th, I believe, is the day that's on those.

It is true that copies were not then placed inside the State's file, but I believe that the Defense and the defendant have had sufficient notice of our intent to join the offenses, so the spirit of that requirement had been fulfilled.

[THE COURT]: [Defense counsel], did you get a copy of it on January 26th?

[DEFENSE COUNSEL]: I am looking for that, Your Honor. I'm trying to see what the date was.

What was the date again?

[THE COURT]: January 26th?

[DEFENSE COUNSEL]: I have a copy of – I have a copy of it, Your Honor.

[THE COURT]: Okay.

[DEFENSE COUNSEL]: I cannot tell you for a fact that I received it on January the 26th. I myself – well, I cannot tell you I got on the 26th, but I do have a copy of it.

[THE COURT]: All right. While were talking about this, let's just go ahead and take up the State's notice of intent to consolidate and join the offenses.

Now, my understanding is the offense is one resisting arrest and one assault bodily injury of a family member that arose out of the same criminal episode. Is that –

[PROSECUTOR]: That's correct.

4

[THE COURT]: -- the same date of February 25th, 2011?

[PROSECUTOR]: That's correct.

[THE COURT]: Is that correct?

[PROSECUTOR]: Yes, Your Honor.

[THE COURT]: [Defense Counsel], you think they should be tried separately because?

[DEFENSE COUNSEL]: Your Honor, we believe that if we try them together, that its probative value is substantially outweighed by prejudicial value, and it will be unfair and prejudicial as well as – to my client as well as a confusion of the issues. It could be misleading to the jury.

[THE COURT]: Okay. And I believe the State's argument, what they've told me off the record and in front of [defense counsel], is that testimony of both offenses is going to come out. When you talk about one, you're going to end up talking about both of them. They're not going to be able to be separated; is that correct?

[PROSECUTOR]: That's correct, Your Honor. Both of them are contextual offenses.

[THE COURT]: All right. Your motion for continuance is denied, and the State's motion for – to join the offenses is granted.

The cases were tried together, and the jury found Lewis guilty of the offense of assault bodily injury-family member. The jury, however, deadlocked on the resisting-arrest charge, prompting the trial court to grant a mistrial on that charge.

## CONTINUANCE AND CONSOLIDATION

Throughout his brief, Lewis consistently identifies his first issue as follows:

The trial court erred by denying [his] motion for continuance and granting the State's motion to consolidate because the State did not comply with section 3.02(b) of the Texas Penal Code, because [he] pointed out the State's failure to comply with section 3.02(b) of the Texas Penal Code, and because [he] requested a continuance based upon the State's failure to comply with section 3.02(b) of the Texas Penal Code.

The State counters that Lewis failed to preserve his complaint for appellate review.   According to

the State:

> Appellant cannot complain on appeal about the trial court's denial of his unsworn oral motion for continuance.   Appellant sought no other relief in the trial court for the State's failure to comply with the thirty-day filing requirement of section 3.02(b), and he raises no complaint on appeal about the denial of any other relief.

We disagree.

The State is correct in asserting that Lewis forfeited his appellate challenge to the trial

court's denial of his oral request for a continuance because he failed to file a sworn written motion

for continuance.   *Blackshear v. State*, 385 S.W.3d 589, 591 (Tex.Crim.App. 2012); *Anderson v.*

*State*, 301 S.W.3d 276, 279 (Tex.Crim.App. 2009); TEX.CODE CRIM.PROC.ANN. arts. 29.03, 29.08

(West 2009)(trial court may grant continuance only upon a written motion sworn by the State or

the defendant).[2]   However, as the State acknowledges, Lewis is also complaining that the trial

---

[2] Lewis argues that the trial court's denial of his oral request for a continuance is subject to appellate review because "allow[ing] the State to file its notice of joinder on the date of trial and . . . insist[ing] . . . [he] fil[ed] a written and sworn motion for continuance" deprived him of due process.   In support of this proposition, Moreno cites *Munoz v. State*, 24 S.W.3d 427 (Tex.App.--Corpus Christi 2000, no pet.).   Lewis's reliance on *Munoz* is misplaced, however.

In *Munoz*, the court concluded that the trial court did not abuse its discretion in denying the appellant's unsworn oral motion to recess his trial for a week to secure the appearance of a witness whose testimony contradicted other testimony but did not exculpate the appellant.   *Id.* at 432.   In reaching its conclusion, the court remarked, "[t]he unsworn oral motion made by appellant's trial counsel, whether a motion for a continuance, or a motion for a recess, can only be based on equitable grounds rather than statutory grounds."   *Id.* at 431-32.   But, as noted above, the Texas Court of Criminal Appeals has since expressly held that there is no due process exception to the requirement that, to preserve an appellate challenge to the trial court's denial of a continuance, the motion for continuance must have been written and sworn.   *See Blackshear*, 385 S.W.3d at 591; *Anderson*, 301 S.W.3d at 280.   While these cases do not directly address the trial court's equitable powers to grant an oral unsworn motion seeking a break in trial—whether labeled a motion for continuance or recess—it is clear that the delay sought must be brief and that the reason for the delay must not be attributable to the defendant.   *See, e.g., Collection Consultants, Inc. v. State*, 556 S.W.2d 787, 795 (Tex.Crim.App. 1977)(trial court did not abuse discretion in refusing to grant recess longer than seventy-five minutes to permit expert to examine a tape recording because defendant could have had expert on hand when tape was produced at trial); *White v. State*, 982 S.W.2d 642, 647 (Tex.App.--Texarkana 1998, pet. ref'd)(trial court did not abuse discretion in refusing to grant oral unsworn motion for delay to permit defendant to locate a witness because defendant did not establish that the witness could be procured by a brief delay, that the witness's testimony was necessary, and that he was not culpable in failing to attach the witness on the first day of trial when the witness did not appear).   Here, it is clear from the record that Lewis was not seeking a brief delay and that Lewis had been notified at

court erred in consolidating the two offenses against him into a single trial because the State failed to give thirty days' notice of the consolidated actions.

### 1. Error

The Texas Penal Code permits the prosecution of a defendant in a single criminal action for all offenses arising out of the same criminal episode.[3] TEX.PENAL CODE ANN. § 3.02(a)(West 2011). When a single criminal action is based on more than one charging instrument, the State must file written notice of the action not less than thirty days before trial. *Id*. at § 3.02(b). If the State fails to file written notice of its intent to consolidate the offenses, the defendant may either: (1) object to the lack of notice when he discovers the State's intention to prosecute more than one offense based upon more than one indictment in a single trial; (2) waive notice and proceed to trial; or (3) request severance as provided by Section 3.04 of the Penal Code. *LaPorte v. State*, 840 S.W.2d 412, 415 (Tex.Crim.App. 1992). If the defendant objects to the lack of notice, the State could proceed on one indictment or seek a reset so as to comply with the notice provision. *Id*.

Here, both cases were set for trial on the same day, and the State announced it wanted to consolidate the cases on the day of trial.[4] Lewis objected to the lack of timely notice and sought a continuance on the basis that he did not receive "adequate and proper" notice. Lewis also argued that trying the cases together would be unfair and prejudicial to him and confuse the jury.

---

some point before trial that the two charges would be tried together. More importantly, Lewis did not argue at trial, nor does he now on appeal, that he was not prepared to proceed.

[3] A "criminal episode" means the commission of two or more offenses, regardless of whether the harm is directed toward or inflicted upon more than one person, under the following circumstances: (1) the offenses are committed pursuant to the same transaction or pursuant to two or more transactions that are connected or constitute a common scheme or plan; or (2) the offenses are the repeated commission of the same or similar offense. TEX.PENAL CODE ANN. § 3.01 (West 2011).

[4] The State concedes on appeal that it did not file its notice to consolidate thirty days before trial.

Because the State failed to provide the required notice in a timely manner, we conclude that the trial court erred in consolidating the two charging instruments in a single trial. *See* TEX.PENAL CODE ANN. § 3.02(b).

## 2. *Harm*

We must now determine if the trial court's error was harmful. TEX.R.APP.P. 44.2. Lewis does not argue that the trial court's error is an error of constitutional magnitude. Instead, he "contends the evidence surrounding his arrest necessarily prejudiced his defense on the assault charge and, therefore affected his substantial rights." An error affects a defendant's substantial rights if it had a substantial or injurious effect or influence in determining the jury's verdict. *King v. State*, 953 S.W.2d 266, 271 (Tex.Crim.App. 1997), *citing Kotteakos v. U.S.*, 328 U.S. 750, 776, 66 S.Ct. 1239, 1253, 90 L.Ed. 1557 (1946). In assessing whether an error affects a defendant's substantial rights, we consider the entire record. *Werner v. State*, 412 S.W.3d 542, 547 (Tex.Crim.App. 2013).

Lewis argued in the trial court that trying the cases together would be unfair and prejudicial and confuse the jury, but provided no further explanation. On appeal, he "contends that the evidence surrounding his arrest necessarily prejudiced his defense on the assault charge . . . ." Lewis's defensive theory in the assault case was that Arges was not credible and that there was no other evidence substantiating the allegation that he assaulted her. During closing arguments, defense counsel argued that the State had not proved Lewis intended to assault anybody. Lewis is thus contending that if the trial court had not consolidated the offenses, the jury would have never known of his aggressive behavior during the arrest and used that "type of evidence" in deciding "whether [he] assaulted Arges." The danger, of course, is that the jury might well have convicted

8

Lewis, not because the State proved the elements of the assault charge beyond a reasonable doubt, but because Lewis was a person of bad character who committed other crimes and therefore probably committed the assault offense. That danger does not exist in this case, however.

The State, during its prosecution of the assault case, adduced strong evidence establishing Lewis's aggressive behavior. As recounted above, Arges testified that Lewis assaulted her on several occasions throughout the day and Coulson testified that Lewis broke the window in his apartment while threatening to kill Arges. Further, there is no indication in the record that the jury had concerns that that evidence relating to the charge of resisting arrest would color their inquiry into Lewis's guilt for the assault charge and thus cast doubt on the legitimacy of the jury's verdict. *Compare Llamas v. State*, 12 S.W.3d 469, 471-72 (Tex.Crim.App. 2000)(concluding that appellant suffered reversible harm from trial court's failure to sever drug charge from unrelated motor-vehicle charge because, among other factors, the jury expressed concerns that evidence relating to the drug charge would color their inquiry into the defendant's guilt for the motor-vehicle charge). Moreover, Lewis has never argued that the two offenses were not subject to consolidation or that his defensive strategy would have been any different if the cases had not been consolidated. Finally, as noted above and below, there is no indication that defense counsel was not prepared to proceed on both cases.

In light of the preceding discussion, we conclude that consolidating the two cases into a single trial was not unfairly prejudicial to Lewis. Therefore, the trial court's error did not have a substantial or injurious effect or influence in determining the jury's verdict. *See King*, 953 S.W.2d at 271.

Lewis's first issue is overruled.

## MISTRIAL

In his third issue, Lewis asserts that the trial court erred in not granting a mistrial after Arges, under questioning by the State, testified that he was on parole. Lewis maintains he "was entitled to be tried for the alleged offense and not for being a bad person generally" and Arges's remark "had everything to do with showing [he] was a criminal and had criminal propensities . . . ." The State contends that for various reasons, Lewis failed to preserve his complaint for appellate review. We agree.

At trial, defense counsel moved for a mistrial based on the following excerpt from the State's examination of Arges:

> [PROSECUTOR]: And while you guys were at the halfway house, did you begin to date?
>
> [ARGES]: Yes, ma'am.
>
> [PROSECUTOR]: And after you moved out and you moved in with a friend, were you still dating?
>
> [ARGES]: Yes, ma'am.
>
> [PROSECUTOR]: Did [Lewis] come and move into that house with you?
>
> [ARGES]: Yes, about two weeks later. He paroled to there.
>
> [DEFENSE COUNSEL]: Objection, Your Honor.

Almost immediately after the trial court sustained his objection, counsel requested an instruction to disregard and asked to approach. Outside the presence of the jury, counsel urged for mistrial. The trial court, without ruling on the request that the jury be instructed to disregard Arges's remark, denied the request for a mistrial. When counsel was asked by the trial court if he wished to pursue his request for an instruction to disregard, counsel withdrew his request for fear that such

10

an instruction would emphasize the testimony, rather than cure it.

To preserve error, a party complaining of the trial court's failure to grant a mistrial must request an instruction to disregard if an instruction could have cured the alleged error. *Cruz v. State*, 225 S.W.3d 546, 548 (Tex.Crim.App. 2007); *Hunter v. State*, 481 S.W.2d 806, 807 (Tex.Crim.App. 1972). As shown above, Lewis's defense counsel, though given the opportunity to pursue his request for an instruction to disregard, informed the trial court that "[it] [did not] have to make an instruction to the jury." On appeal, Lewis does not contend that an instruction to disregard would have been ineffective. Because defense counsel withdrew his request that the jury be instructed to disregard Arges's remark and Lewis has not demonstrated that an instruction to that effect would have been insufficient, Lewis has failed to preserve his complaint for appellate review. Accordingly, Lewis has not shown that trial court erred in denying his motion for a mistrial. *See Hunter*, 481 S.W.2d at 807 (appellant waived complaint that trial court erred in denying his motion for mistrial because he did not request an instruction to disregard the testimony and the court did not agree with appellant "that, under the record, an instruction by the [trial] court could not have cured the error."); *In re A.W.*, 147 S.W.3d 632, 634 (Tex.App.--San Antonio 2004, no pet.)(juvenile waived complaint that trial court erred in denying his motion for mistrial because, though defense counsel requested a mistrial, he did not ask for instruction to disregard testimony and expressly declined court's offer to instruct jury to disregard the testimony).

Lewis's third issue is overruled.

## EXTRANEOUS OFFENSE

In his fourth issue, Lewis asserts the trial court erred in admitting, over objection, Arges's testimony that after he accused her of infidelity, he assaulted a neighbor. Specifically, Lewis

11

argues the extraneous offense to which Arges testified was not relevant to any issue in the case but served only to show his criminal propensity and was therefore inadmissible under Texas Rule of Evidence 404(b). The State counters that the extraneous offense "was admissible as same-transaction contextual evidence to show the circumstances under which the charged assault of Arges occurred." The State also contends that the extraneous offense was admissible because it "confirmed Lewis's motive, intent, and state of mind relative to the charged offenses."

Arges's testimony was admissible as same-transaction contextual evidence. Same-transactional contextual evidence is evidence of other offenses connected with the primary offense. *Rogers v. State*, 853 S.W.2d 29, 33 (Tex.Crim.App. 1993). To be admissible, this type of evidence must be relevant under Rule 401 and, when it includes an impermissible character component, must fit within the "other purposes" exception of Texas Rule 404(b). *Rogers*, 853 S.W.2d at 32-33. With respect to this second prong, same-transactional contextual evidence "is deemed admissible as a so-called exception to the propensity rule where 'several crimes are intermixed, or blended with one another, or connected so that they form an indivisible criminal transaction, and full proof by testimony, whether direct or circumstantial, of any one of them cannot be given without showing the others.'" *Mayes v. State*, 816 S.W.2d 79, 87 n.4 (Tex.Crim.App. 1991)[internal citation omitted]. Thus, "[o]nly if the facts and circumstances of the instant offense would make little or no sense without also bringing in the same transaction contextual evidence, should the same transaction contextual evidence be admitted." *Rogers*, 853 S.W.2d at 33.

Here, Arges's testimony that Lewis assaulted a neighbor after accusing her of infidelity was relevant because it set the stage for Lewis's subsequent assault on her. Evidence of the facts

12

and circumstances of an offense are relevant when they have influence over a consequential fact, *i.e.*, a fact which has something to do with the ultimate determination of guilt or innocence in a particular case. *See Mayes*, 816 S.W.2d at 84. Lewis's assault on Arges's neighbor was not only relevant, but also inseparably linked with the offense charged. Within a matter of minutes, Lewis argued with Arges, accused her of infidelity, assaulted the neighbor, and slapped Arges. Thus, the two assaults were not only close in time and place from each other but they also occurred as part of an unbroken series of intermixed events. Given that the two assaults were part of an unbroken series of intermixed events, it would have been impracticable to describe the argument between Lewis and Arges, its subject matter, and the magnitude of Lewis's state of agitation without the account of Lewis's assault on the neighbor. Without that testimony, the account of the events would have been incoherent and would not have made sense to the jury. Accordingly, the trial court did not erred in admitting Arges's testimony as same-transaction contextual evidence.

Lewis's fourth issue is overruled.

## BAD ACT

In his fifth issue, Lewis insists the trial court erred in admitting, over objection, Arges's testimony that when she came home from work, Lewis was hyper "like he had used drugs." Specifically, Lewis argues that the trial court should have sustained his "speculation" objection because Arges lacked personal knowledge as required by Texas Rule of Evidence 602. The State contends that because Arges had previously testified that she and Lewis used crack cocaine together months before the assault, "[she] likely was familiar based on her personal experience and observations with how [Lewis] acted when he used drugs, and [she] was permitted to testify based

upon her personal knowledge of [Lewis] that he was hyper like he had been using drugs."

Arges was competent to testify that Lewis was under the influence of drugs when he assaulted her. Pursuant to Rule 602, a witness may not testify to a matter unless he or she has personal knowledge of the matter. *Bigby v. State*, 892 S.W.2d 864, 889 (Tex.Crim.App. 1994); TEX.R.EVID. 602. "Personal knowledge will often come directly from the witness's senses . . . [or] . . . experience." *Fairow v. State*, 943 S.W.2d 895, 898 (Tex.Crim.App. 1997). Here, Arges had personal knowledge of the matter, both from her senses and her experience. Arges personally observed Lewis's behavior on the day in question, and she testified previously that she and Lewis used crack cocaine in late September or early October 2010 while living together. Accordingly, the trial court did not err in admitting Arges's testimony on the basis that she did not have personal knowledge.

Lewis's fifth issue is overruled.

## INEFFECTIVE ASSISTANCE OF COUNSEL

In his second issue, Lewis claims his trial counsel was ineffective for failing to introduce into evidence the letters Arges had written to him while he was in jail and her affidavits of non-prosecution. Lewis contends that counsel should have introduced Arges's affidavits of non-prosecution to damage her credibility, which he urges was "the crux of the case" at trial. Lewis argues that counsel should have introduced Arges's letters because they revealed Arges lied about the assault "to pay [him] back for his perceived infidelity towards her with his baby's mother." We disagree.

### *Standard of Review/Applicable Law*

A defendant is entitled to reasonably effective assistance of counsel. *Strickland v.*

14

*Washington*, 466 U.S. 668, 686, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984); *King v. State*, 649 S.W.2d 42, 44 (Tex.Crim.App. 1983).   To establish that counsel provided ineffective assistance, Lewis must show by a preponderance of the evidence that his counsel's representation fell below the standard of prevailing professional norms and that there is a reasonable probability that, but for counsel's deficiency, the result of the trial would have been different.   *Strickland*, 466 U.S. at 687, 104 S.Ct. at 2064; *Davis v. State*, 278 S.W.3d 346, 352 (Tex.Crim.App. 2009); *Hernandez v. State*, 988 S.W.2d 770, 770-71 (Tex.Crim.App. 1999).

In evaluating whether counsel's representation fell below the standard of prevailing professional norms, we look to the totality of the representation and the particular circumstances of the case.   *Thompson v. State*, 9 S.W.3d 808, 813 (Tex.Crim.App. 1999).   The issue is whether counsel's assistance was reasonable under all the circumstances and prevailing professional norms at the time of the alleged error.   *See Strickland*, 466 U.S. at 688-89, 104 S.Ct. at 2064-65.   Review of counsel's representation is highly deferential, and the reviewing court indulges a strong presumption that counsel's conduct fell within a wide range of reasonable representation.   *Salinas v. State*, 163 S.W.3d 734, 740 (Tex.Crim.App. 2005); *Mallett v. State*, 65 S.W.3d 59, 63 (Tex.Crim.App. 2001).   A reviewing court will rarely be in a position on direct appeal to fairly evaluate the merits of an ineffective assistance claim.   *Salinas*, 163 S.W.3d at 740; *Thompso*n, 9 S.W.3d at 813-14.   "In the majority of cases, the record on direct appeal is undeveloped and cannot adequately reflect the motives behind trial counsel's actions."   *Salinas*, 163 S.W.3d at 740, *quoting Mallett*, 65 S.W.3d at 63.   To overcome the presumption of reasonable professional assistance, "any allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness."   *Id*., *quoting Thompson*, 9 S.W.3d at

15

813. It is not appropriate for an appellate court to simply infer ineffective assistance based upon unclear portions of the record. *Mata v. State*, 226 S.W.3d 425, 432 (Tex.Crim.App. 2007).

In evaluating whether there is a reasonable probability that, but for counsel's deficiency, the result of the trial would have been different, we must be convinced that counsel's errors were so serious that they deprived the appellant of a fair trial; that is, a trial with a reliable result. *Strickland*, 466 U.S. at 687, 104 S.Ct. at 2064. In other words, an appellant bears the burden to establish that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id*. The ultimate focus of our inquiry must be on the fundamental fairness of the proceeding in which the result is being challenged. *Strickland*, 466 U.S. at 697, 104 S.Ct. at 2070.

### *Discussion*

Based on the record brought on appeal, Lewis has failed to establish that his trial counsel was ineffective. Lewis relies on the following exchange at trial, rather than an independently-developed record, to support his ineffectiveness claim:

> [DEFENSE COUNSEL]: My client has indicated he wishes me to question the alleged victim in reference to an affidavit of non-prosecution that she signed.
> He also wants me to question the witness in reference to a lease that -- an apartment lease that lists his name and her name on the apartment lease,[5] as well as he wants me to introduce some other evidence in reference to letters that were written to him at the jail, and some of those letters refer to parole.
> I have told my client that this -- that I believe that this is not -- it is not in his best interest, because it will open up the door to any indication that he's on parole, as well as that he's on parole for murder.
> And I'm highly -- and he's asking me to introduce this evidence, and I'm telling him that if we do it, it's going to be against my advice to him.

---

[5] Lewis acknowledges in his brief that "the record does not show adequately what the nature of the dispute was between counsel and [him]" regarding the lease. Accordingly, he does not assert that defense counsel was ineffective for failing to question Arges about the lease.

[THE COURT]: Do you understand that, Mr. Lewis?

[DEFENDANT]: Yes, ma'am.   Can I say something?

[THE COURT]: Yeah.

[DEFENDANT]: The letter that I have, it's not saying nothing about parole.   They haven't said nothing about the reason why she's doing this.   See, my baby mama called on her cell phone.   I kept her cell phone while she went to work.
    I had fell asleep when she came from work, so she had got the cell phone and said she woke me up and said, 'Oh, so you're going to call your baby mama while I'm at work?'   That's what kicked it all off right there.

[THE COURT]: Okay.   But do you understand what [defense counsel] is saying?

[DEFENDANT]: Yes, ma'am.   I'm aware of that, but I'm just saying there is nothing being said about my baby mama, the reason why she's saying this.
    This letter ain't saying nothing about no parole or nothing; it's saying how insecure she is, how much she love me and that she shouldn't have did this here because my baby mama call the cell phone.
    That's what this is saying.   It's not saying nothing about parole.

[THE COURT]: All right.   Well, I have no idea what the letter says, but you understand [defense counsel]'s concerns about all this, that it might open the door to the fact that you're on parole?

[DEFENDANT]: Yes, ma'am.   But I'm saying about my baby mama --

[THE COURT]: I understand that.

[DEFENDANT]: But --

[THE COURT]: Hey, I'm talking.   I can't ask the questions.   It's up to the attorneys to ask the questions, all right?
    If y'all choose to go into that, maybe you can; maybe you can't.   It just depends on whether they object or whether they don't object.
    But you understand his concerns --

[DEFENDANT]: Yes, ma'am.

[THE COURT]: -- about some of the things you want to go forward with.

[DEFENDANT]: Yes, ma'am.

17

[THE COURT]: All right. And so are you going to let him try the case in the manner he deems appropriate, or do you want him to do what you're asking him to do?

[DEFENDANT]: I just want him to bring up about my baby mama. He don't have to bring this up.

[THE COURT]: I have no idea what that is.

[DEFENDANT]: This is a non-prosecution affidavit where she's saying she's getting the house. She filled out two of them, one notarized, one not.

[THE COURT]: All right. Y'all have about five minutes to talk to figure out what you're going to do.

This exchange reveals that defense counsel did not want to offer the letters Lewis received while in jail because counsel feared that they would "open up the door to any indication that [Lewis] [i]s on parole, as well as that [Lewis] [is] on parole for murder." Given that Lewis was being tried for bodily injury to a family member, counsel's reasoning is sound and consistent with his other efforts at trial to curtail the mention of parole. And though Lewis maintains on appeal, as he did at trial, that the letters do not mention parole and instead evince Arges's motivation to lie, the letters are not included in the record on appeal. Without knowing the content of the letters, we are unable to independently evaluate whether counsel was ineffective for failing to introduce them. "[T]o hold trial counsel's actions (or inaction) ineffective in the instant case would call for speculation and such speculation is beyond the purview of this Court." *Ex parte Varelas*, 45 S.W.3d 627, 632 (Tex.Crim.App. 2001).

What the exchange identified above fails to reveal is defense counsel's trial strategy regarding Arges's affidavits of non-prosecution. On appeal, Lewis acknowledges that counsel may not have wanted to offer the affidavits for fear Arges would have testified that she signed

18

them because she was scared of Lewis. Nevertheless, he maintains that counsel should have introduced the affidavits into evidence because they would have damaged Arges's credibility. However, given that the record is undeveloped and does not adequately reflect the motives behind counsel's actions, we cannot conclude that counsel's representation was unreasonable, especially since Lewis himself has identified a plausible reason for not introducing the affidavits of non-prosecution. Accordingly, "because of the strong presumptions that trial counsel's conduct falls within the wide range of reasonable professional assistance and that such conduct might be sound trial strategy, we must conclude, in light of an otherwise silent record, that [Lewis] failed to meet his burden of showing that his trial counsel's assistance was ineffective." *Ex parte Varelas*, 45 S.W.3d at 632.

Further, Lewis has not shown how counsel's performance prejudiced him. Without providing reasoned argument, Lewis simply asserts that had counsel introduced the letters and affidavits, "there is a reasonable probability that the result of the proceeding would have been different." However, there is simply nothing in the record demonstrating a reasonable probability that the result of the proceeding would have been different *but for* trial counsel's asserted deficiencies. The State introduced corroborating evidence independent of Arges's testimony. This evidence included photographs depicting Arges's injuries and Coulson's testimony. Lewis does not contend that counsel should have objected to this evidence, or that counsel was ineffective because he did not do so. Nor does Lewis contend that the evidence outlined above was inadmissible.

In light of the foregoing, we conclude that Lewis has not shown that his counsel provided ineffective assistance. *See Strickland*, 466 U.S. at 687-88, 104 S.Ct. at 2064-65.

19

Lewis's second issue is overruled.

## CONCLUSION

Having overruled all five of Lewis's issues, we affirm the trial court's judgment.


February 19, 2014
YVONNE T. RODRIGUEZ, Justice

Before McClure, C.J., Rivera, and Rodriguez, JJ.

(Do Not Publish)